Opinion issued January 27, 2011



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-10-00193-CV

———————————

GEORGE ALLAN BOLTON, Appellant

V.

ANGELA
CAMILE BOLTON,
Appellee



 



 

On Appeal from the 247th District
Court

Harris County, Texas



Trial Court Case No. 1999-16099

 



 

MEMORANDUM OPINION

          Appellant, George Allan Bolton,
appeals from a judgment modifying his child support obligation, holding him in
contempt for failure to pay child support, and granting his ex-wife, Angela
Camile Bolton, appellee, a monetary award for arrearages and attorneys
fees.  In four issues, George contends
that the trial court abused its discretion when it modified his child support
obligation without entering findings that there had been a substantial and material
change in circumstances, refused to apply payments that he made in excess of
his child support obligation as an offset against his future child support
obligations, found him in contempt for failing to make child support payments,
and awarded Angela attorney’s fees.  We
conclude that the trial court did not abuse its discretion by determining George
was not entitled to an offset for payments he agreed to make in excess of the
child support order, by finding George in contempt, or by awarding attorney’s
fees but that it did commit reversible error by modifying George’s child
support obligation without making the statutorily-mandated findings.  We reverse and remand the modification of the
child support obligation and affirm the remainder of the trial court’s
judgment.

Background

          In
June 1999, George and Angela divorced. 
Two children resulted from their marriage: the first born in 1991, and
the second born in 1993.  During the
original divorce proceedings, Angela was represented by counsel, but George was
not.  George and Angela agreed to the
terms of the divorce, which they filed with the trial court.  In the final divorce decree, the trial court
designated Angela as the joint managing conservator of the two marital children
with the exclusive right to receive child support, and it ordered George to pay
Angela $800 per month in support of their two children, beginning on June 1,
1999.  George was further ordered to pay
half of any medical expenses not paid by insurance incurred on behalf of their
children.

          Although
the child support obligation relates to both of their two children, the final
divorce decree referred only to “the child.” 
The decree provides that the obligation terminates when:

1.       the
child reaches the age of eighteen years, provided that, if the child is fully
enrolled in an accredited secondary school in a program leading towards a high
school diploma, the periodic child support payments shall continue to be due
and paid until the end of the month in which the child graduates;

 

2.       the
child marries;

 

3.       the
child dies;

 

4.       the
child’s disabilities are otherwise removed for general purposes; or

 

5.       [a]
further order modif[ies] this child support [order].

 

The final divorce decree does not
provide for partial termination of the support obligation.[1] 

          Concurrent
with the final divorce decree, the parties entered into a second fully executed
document, entitled “Agreed Stipulations Incident to Decree of Divorce”
(hereafter “Agreed Stipulations”), which was filed with the trial court.  George signed the Agreed Stipulations that
had been drafted by Angela.  The terms of
Agreed Stipulations provide for the modification of George’s child support
obligation as follows:

Respondent,
GEORGE ALLAN BOLTON, stipulates and agrees that in the event his annual salary
shall exceed $50,000.00, then in that event the Final Decree of Divorce may be
modified upon motion of the Petitioner [Angela] to provide that Respondent,
GEORGE ALLAN BOLTON, shall be obligated to pay and shall pay to Petitioner,
ANGELA CAMILLE BOLTON, child support of $1,000.00 per month, with the further
agreed proviso that in the event his annual salary shall exceed $60,000.00,
then in that event the Final Decree of Divorce may be modified upon motion of
the Petitioner to provide that Respondent, GEORGE ALLAN BOLTON, shall be
obligated to pay and shall pay to Petitioner, ANGELA CAMILLE BOLTON, child
support of $1,200.00 per month . . . .

 

Like the child support payment
amount specified in the final divorce decree, the amounts specified in the Agreed
Stipulations relate to the support of both their children.  Neither the final divorce decree nor the
Agreed Stipulations contains any agreement on partial termination of the child
support obligation in the event that support obligation would terminate as to
one child but not the other.

          In
1999, when the final divorce decree was entered, George’s annual income was
approximately $49,000.  In 2000, George’s
annual income exceeded $50,000.  Neither
the final divorce decree nor the Agreed Stipulations required George to inform
Angela when his annual income increased or exceeded the specified
thresholds.  That year, Angela telephoned
George and inquired whether his annual salary had exceeded $50,000, which
George admitted.  Angela then told George
that, based on the Agreed Stipulations, which had been filed with the court, he
was now supposed to pay the increased amount of child support.  Believing he was obligated to do so, George
began paying $1,000 per month, starting mid-May 2000.  Around 2002, George’s annual income exceeded
$60,000.  Around 2004, Angela telephoned
George and inquired whether his annual salary had exceeded $60,000, which
George admitted.  Angela again told George
that, based on the Agreed Stipulations, he was supposed to pay the increased
amount of child support.  Believing he
was obligated to do so, George began paying $1,200 per month in child
support.  Through 2008, the child support
obligation was never modified and George never contacted the court to determine
if a motion for modification had been filed.

          At
trial, George testified that, based on Angela’s statements that he was supposed
to pay the increased child support amounts, he had concluded that the child
support order had been modified, as required by the Agreed Stipulations.  He further testified that, had he known that
there had in fact been no modification orders compelling him to pay the
increased amounts, he would not have overpaid. 
Angela testified that, because George increased the monthly child
support payments, it was unnecessary for her to file a motion to formally
modify the child support obligation.  She
further testified that, had George not increased the monthly
child support payments to the amounts set forth in the Agreed Stipulations, she
would have filed a motion to modify at that time. 

          Around
December 2008, George mentioned to Angela that he was considering buying a car
for their oldest child when he turned eighteen. 
In doing so, George manifested his understanding that, after their
oldest child graduated high school in May 2009 and turned eighteen-years old in
September 2009, his monthly child support obligation would be reduced by 50% to
$600.  Angela then retained counsel, who
calculated, based on George’s 2008 average monthly net resources, that George
would owe, under the statutory guidelines: $1,596 per month in support of both
children and $1,277 per month in support of one child.[2]  In a letter dated March 18, 2009, Angela’s
counsel presented George with these new child support payment
calculations.  George then retained
counsel and put forth, for the first time, the argument that, because the child
support order was never modified, he was entitled to a credit for each excess
payment.  George declined to make any child
support payments due on or after May 1, 2009. 
Through April 2009, George paid, through the Child Support Division, a
total of $35,382.18 in excess of the amount of support ordered in the final
divorce decree.

          On
May 1, 2009, Angela filed, for the first time, a petition to modify the parent-child
relationship, requesting the court to increase George’s child support
obligation, retroactively as of the earlier of the time of service of citation
on George or George’s appearance in the modification action.  The petition asserts:

The
circumstances of the children or a person affected by the [child support] order
have materially and substantially changed since the date of the rendition of
the order to be modified, and the support payments previously ordered should be
increased until the children are eighteen years of age . . . .  The support payments previously ordered are
not in substantial compliance with the [statutory] guidelines . . . ,
and the requested increase would be in the best interest of the children.

 

The petition does not specify which
circumstances have changed or what amount would be in substantial compliance
with the guidelines.  However, in her
supporting affidavit, Angela suggests that George’s increased annual income,
exceeding $100,000, constituted a material and substantial change in the
circumstances of a person affected by the order.  Her affidavit also provided the court with
her counsel’s conclusion, but not the underlying calculation, that George would
owe approximately $1,600 per month in support of both children.  Although she did not mention what George
would owe per month in support of only one child, based on the statutory
guidelines, it would be $1,280 per month.[3]  Neither her petition nor her affidavit
specified a partial termination. 

          On
July 20, 2009, Angela’s attorney mailed George’s attorney a letter containing
an itemized list of unreimbursed medical expense payments, totaling $11,737.09,
that Angela made on behalf of their children. 
The letter requested George pay one-half, or $5,868.55, as required by
the final divorce decree.  On October 14,
2009, Angela filed a motion for enforcement of child support order by
contempt.  In her motion, Angela claimed
George was in contempt for failing to pay monthly child support payments for
May through September 2009 and for failing to pay one-half of the children’s
unreimbursed medical expenses.

          On
December 15, 2009, the trial court held a bench trial on the merits of Angela’s
petition and motion.  At trial, the
parties stipulated to the admission of an exhibit entitled “Petitioner’s
Summary of Relief Requested,” in which Angela requested the court to modify
George’s child support obligation, retroactive to May 15, 2009.  Specifically, Angela requested a modification
with a built-in step-down when their oldest child turned eighteen:  for May through September 2009, she requested
$1,600 per month for both children and, for October 2009 and afterwards, she
requested $1,275 per month for the remaining child.  The parties also stipulated to the admission
of George’s income tax information for 2006–2008, the March 18 letter from
Angela’s counsel to George providing calculations, based on that same
information, of each requested amount, and George’s year-to-date paycheck
listing his 2009 annual salary as $105,000. 
George testified that, according to his own calculation, he should pay
$1,132.27 per month for one child under the statutory guidelines.  Although he did not testify as to what he
should pay in support of two children, based on the statutory guidelines, it
would be $1,415.34 per month.[4]

          The
court orally announced that it was refusing to credit George’s excess payments
as prepayments of future child support based on its factual findings that
George “did not intend to prepay child support but was under the understanding
that he was complying with” the Agreed Stipulations and that George “expressed
an intent for the application of the amount [of the excess payments] in” the
Agreed Stipulations.

          On
January 6, 2010, the trial court entered an order holding George in contempt for
failure to pay child support and granting judgment for arrearages.  The trial court found that George failed to
pay $800 per month, as ordered in the final divorce decree, for the seven-month
period of May through November 2009, which was for a $5,600 total
arrearage.  Accordingly, the court found
that George was in contempt for each failure to pay.  The trial court also found that George failed
to pay his one-half of their children’s unreimbursed medical expenses that
amounted to $5,868.55.  Accordingly, the
court granted Angela a judgment for the unreimbursed medical expenses.  The court also granted Angela judgment for
her reasonable and necessary attorney’s fees in the amount of $3,250.

          The
same day, the trial court entered an order modifying, for the first time, the
parent-child relationship.  Rather than
make its own findings, the court found that “the material allegations in the
petition to modify are true and that the requested modification is in the best
interest of the children.”  The trial
court stated, “IT IS ORDERED that the requested modification is GRANTED.”  However, the trial court’s modification of
George’s child support obligation did not in fact conform to Angela’s request.

          The
trial court modified George’s child support obligation retroactively starting
on May 1, 2009, the date on which Angela filed the motion to modify.  As the court announced in its ruling at
trial, it was modifying George’s child support obligation, from $800 per month
in support of two children to $1,200 per month in support of one child, “in
conformance with the” Agreed Stipulations “that was entered.”  However, the Agreed Stipulations specified
that the amounts of $1,000 and $1,200 per month were in support of both of
their children.  Moreover, Angela never
requested the trial court to modify George’s child support obligation in
conformance with the Agreed Stipulations. 
Her petition for modification was based upon a substantial and material
change in circumstances, not the Agreed Stipulations; as she clarified in her
supporting affidavit, this change in circumstances was the fact that George now
made in excess of $100,000 annually.  In
her affidavit and her trial exhibit, Angela requested $1,600 in support of both
children, stepped-down to $1,275 in support of the remaining child.  Angela never requested $1,200 per month in
support of one child.

          Based
on George’s failure to pay $1,200 per month for the eight-month period of May
through December 2009, the trial court granted Angela a cumulative judgment
against George for retroactive child support in the amount $9,600.  The trial court, upon a finding that good
cause existed, awarded Angela judgment in the amount of $3,250 for attorney’s
fees, expenses, and costs.  The trial
court awarded Angela judgment in the amount of $5,000 for contingent attorney’s
fees if George pursued an appeal to the Texas Courts of Appeals and $3,500 if
George filed a Writ of Error to the Supreme Court of Texas.

Standard of Review

          In
general, a trial court’s ruling on child support will not be reversed on appeal
unless there is a clear abuse of discretion. 
Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990); McLane v. McLane,
263 S.W.3d 358, 362 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  The test is whether the trial court acted arbitrarily,
unreasonably, or without reference to guiding rules or principles.  McLane,
263 S.W.3d at 362.  The reviewing court
must review the evidence in the light most favorable to the trial court’s
actions and indulge every legal presumption in favor of the order.  Id.  There is no abuse of discretion if some
probative and substantive evidence supports the order.  Id.

          George
contends that the evidence is both legally and factually insufficient to
support the trial court’s refusal to credit George’s excess payments towards
his future child support obligation. 
However, under an abuse of discretion standard, legal and factual
insufficiency are not independent, reversible grounds of error; rather, they
are relevant factors in assessing whether the trial court abused its
discretion.  Patterson v. Brist, 236 S.W.3d 238, 240 (Tex. App.—Houston [1st
Dist.] 2006, pet. dism’d).

          In
an appeal of a judgment rendered after a bench trial, the trial court’s
findings of fact have the same weight as a jury’s verdict.  In re
K.R.P., 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied).  When challenged, however, a
trial court’s findings of fact are not determinative unless they are supported
by the record.  Id.  We review the
sufficiency of the evidence supporting the challenged findings to determine
whether the trial court abused its discretion in making such findings.  Id.

          Our
review of a legal sufficiency issue requires us to consider only the evidence
and inferences that tend to support the finding, disregarding all evidence and
inferences to the contrary.  Vannerson v. Vannerson, 857 S.W.2d 659,
666 (Tex. App.—Houston [1st Dist.] 1993, writ denied).  If there is any evidence of probative force
to support the finding, i.e., more than a mere scintilla, we will overrule the
issue.  Id.  In reviewing a factual
sufficiency issue we must consider, weigh, and examine all of the evidence that
supports and contradicts the finding.  Id. 
We will set aside the finding only if the evidence standing alone is too
weak to support it or it is so against the overwhelming weight of the evidence
that it is manifestly unjust and clearly wrong. 
Id.

Crediting Excess Payment as Child
Support Offset

          In
his first issue, George contends that the trial court abused its discretion when
it found that he was in arrears on his child support obligation because it
refused to apply his excess payments as an offset against his child support
obligation.  

A.      Applicable Law

          In
a trial on a “motion for enforcement of child support,” the obligee has burden
of establishing the existence of a child support arrearage and the obligor has
the burden of establishing any offset.  See Beck v. Walker, 154 S.W.3d 895, 904 (Tex. App.—Dallas 2005,
no pet.); see also Tex. Fam. Code Ann. § 157.008(d) (West 2010)
(obligor may request offset for provision of actual support); id. § 157.262(a), (f) (arrearage may be
subject to offset only as provided by title). 
In addition to any court-ordered, monthly child support payment
obligation, a parent also has a common-law duty to support his child.  Ex
parte Holloway, 490 S.W.2d 624, 628 (Tex. Civ. App.—Dallas 1973, no
writ).  Accordingly, a payment from an
obligor, who is not in arrears, received in an amount that exceeds the
court-ordered amount may be treated as either (1) a credit against the
obligor’s future court-ordered child support obligation, or (2) a payment to
meet the current needs of the child, for which no credit will be given.  See Tex. Fam. Code. Ann. § 154.014(b) (West
2009); In re B.S.H., 308 S.W.3d 76,
81 (Tex. App.—Fort Worth 2009, no pet.). 
The express intent of the obligor as of the time he made the payment is
controlling over whether the excess is to be treated as a credit or not.  See Tex. Fam. Code. Ann. § 154.014(a)
(payments received by child support agency or local child support registry); In re B.S.H., 308 S.W.3d at 79 (payments
received by individual obligee).  In
addition, any excess payment that is “mistakenly made” is to be credited
against the obligor’s future child support obligation.  In re
B.S.H., 308 S.W.3d at 81.  Once an
obligor’s child support obligation terminates, the obligor may file a suit to
recover any remaining credit.  See Tex.
Fam. Code Ann. § 154.012(a)–(b) (West 2010); In re B.S.H., 308 S.W.3d at 81; see
also In re L.K.K., No. 11-07-00106-CV, 2008 WL 4173742, at *2 (Tex.
App.—Eastland Sept. 11, 2008, pet. denied).

Where an
obligor makes an excess payment directly to the individual obligee, “the trial
court shall give effect to any expressed intent of the obligor” for the
application of the excess amount.  In re B.S.H., 308 S.W.3d at 79.  In contrast, where an obligor makes an excess
payment to a child support agency or local child support registry, “the agency
or registry, to the extent possible, shall give effect to any expressed intent
of the obligor for the application of the” excess amount.  Tex.
Fam. Code. Ann. § 154.014(a). 
However, “[i]f the obligor does not express an intent for the
application of the [excess] amount . . . , the agency or registry
shall:  (1) credit the excess amount to
the obligor’s future child support obligation; and (2) promptly disburse the
excess amount to the obligee.”  Id. § 154.014(b).  Nevertheless, an agency or registry’s decision to represent an
arrearage or credit is not a judgment binding on a trial court.  See
Tex. Fam. Code Ann. § 157.263(a)
(West 2010) (“If a motion for enforcement of child support requests a money
judgment for arrearages, the [trial] court shall confirm the amount of
arrearages and render one cumulative money judgment.”); Beck, 154 S.W.3d at 904 (“Only after the
arrearage is confirmed can the [trial] judge reduce the amount of the judgment
to reflect offsets . . . for actual support.”) (quoting Buzbee v. Buzbee, 870 S.W.2d 335, 340 (Tex. App.—Waco 1994, no
writ)).

 

B.      Analysis

          The
trial court orally announced its findings that George “expressed an intent for
the application of the amount [of the excess payments] in” the Agreed
Stipulations and that George made each payment “under the understanding that he
was complying with” the Agreed Stipulations. 
George does not dispute the trial court’s finding that he “did not
intend to prepay child support.”  Rather,
he contends that each excess payment was “mistakenly made” and thus should have
been credited against his future child support obligation.  See
In re B.S.H., 308 S.W.3d at 81.  We do not decide whether the Agreed Stipulations constitutes
an enforceable contract; rather, we look to the Agreed Stipulations only as
evidence of George’s expressed intention as to the application of the excess
amounts.

          In
the Agreed Stipulations, George voluntarily agreed to make each increased
payment in the amounts specified.  These
specified payments were clearly intended to meet the then-current needs of his
children.  See id.  George contends that he agreed to pay the
increased amounts only on the condition precedent that Angela first file a
motion to modify.  While Angela never
fulfilled this condition prior to the initiation of the proceedings below,
George never insisted that Angela file a motion to modify nor did he verify
with the court that such a motion had been filed.  Rather, George performed in accordance with
the terms the Agreed Stipulations.  By
performing without insisting on fulfillment of the condition precedent, George
waived the condition.  See Ames v. Great S. Bank, 672 S.W.2d
447, 449 (Tex. 1984) (waiver of condition precedent may be inferred from
conduct).

          Nevertheless,
George contends that he “mistakenly made” each excess payment because he
incorrectly “believe[d] that there was an order compelling [him] to pay” the
increased amounts.[5]  While George’s mistaken belief may have led
him to unintentionally waive the condition precedent in the Agreed Stipulation,
it does not follow that the excess payments were “mistakenly made.”  This is not a case of an accidental double or
over payment; George clearly intended to make each excess payment in the
specific amounts specified by the Agreed Stipulations.  Moreover, the trial court was free to
disbelieve George’s testimony that he believed a modification order had been
filed.

          Because
George expressed an intent in the Agreed Stipulations as to the increased child
support payments, the child support division, to whom George made all payments,
was under a statutory obligation to give effect to this expressed intent.  See Tex. Fam. Code Ann. § 154.014(a).  However, the child support division
apparently proceeded under the assumption that George had not expressed such an
intent, by crediting the excess amounts as prepayments.  See id.
§ 154.014(b).  The fact that the
child support division credited George’s account was not binding on the trial
court.  See Beck, 154 S.W.3d at
904.  We hold that the trial court did
not abuse its discretion in refusing to credit George’s excess payments as an
offset against his future child support obligation.  See Tex. Fam. Code Ann. § 154.014(b); cf. In re B.S.H., 308 S.W.3d at 79
(concluding trial court did not abuse its discretion in refusing to credit
excess payments where record supported findings that obligor increased amount
paid as child support in lieu of obligee taking legal action to increase
support, obligor intended increased payment amounts to be current child
support, and obligor did not intend for excess payments to be credited as future
child support at time he made payments); In
re L.K.K., 2008 WL 4173742, at *2 (affirming trial court’s refusal to
credit excess payments where record supported findings that obligor voluntarily
increased amount paid concomitantly with increases in his income and, under
statutory  guidelines, obligor should
have been paying more child support because his earnings increased).

          We
overrule George’s first issue.

Contempt Based on Agreed Stipulations

          In
his third issue, George contends that the trial court erred when it found he
was in contempt for failure to pay his court ordered child support based upon
the amounts stated in the Agreed Stipulations. 
George’s third issue is based on an inaccurate premise as the trial
court found that George was in contempt for failing to make child support
payments in the amount of $800 per month, as ordered in the final divorce
decree.  The trial court did not find,
nor did Angela ask the court to find, that George was in contempt for failing
to make child support payments in the amount of $1,200 per month.  Simply put, George complains of an action
that the trial court did not take.  See Tex.
R. App. P. 38.1(f) (appellant’s brief must state issue or point of error
presented for review).  We hold that the
trial court did not abuse its discretion by finding George in contempt for
failure to pay the $800 per month ordered by the final divorce decree.

          We
overrule George’s third issue.

Attorney’s Fees

          In
his fourth issue, George contends that the trial court erred in awarding Angela
attorney’s fees.  However, as George
acknowledges, a court shall order a respondent to pay a movant’s reasonable
attorney’s fees and all court costs if that court finds that the respondent
failed to make child support payments.  Tex. Fam. Code Ann. § 157.167 (West
2009).  George does not challenge the
trial court’s action applying the relevant law awarding attorney’s fees in
light of its other findings.  Rather, his
challenge to the award of attorney’s fees is premised upon his prior
contentions that the court erroneously failed to apply his excess payments as
an offset against his child support obligation and erroneously found him in
contempt based on the Agreed Stipulations. 
As explained above, the trial court did not err in refusing to apply
George’s excess payments as an offset, and the trial court did not base its
finding of contempt on the Agreed Stipulations. 
Accordingly, the trial court did not abuse its discretion by awarding
attorney’s fees.  See id.

          We
overrule George’s fourth issue. 

Modification of Child Support
Obligation

          In
his second issue, George contends the trial court erred when it granted
Angela’s petition to modify his child support obligation because it based that
modification upon the parties’ Agreed Stipulations and it did not enter a
finding that there had been a substantial and material change in circumstances.

          A.      Applicable Law

          Generally,
a court of continuing jurisdiction over a suit affecting the parent-child
relationship may modify an order of child support if (1) the circumstances of
the child or a person affected by the order have materially and substantially
changed since the date of the order’s rendition or the date of the signing of a
mediate or collaborative law settlement agreement on which the order is based,
or (2) it has been three years since the order was rendered or last modified
and the monthly amount of the child support award under the order differs by
either 20% or $100 from the amount that would be ordered in accordance with the
child support guidelines.  Tex. Fam. Code Ann. § 156.401(a) (West
2009).  An order modifying a child
support obligation may accrue retroactively starting on the earlier of the date
of service of citation or an appearance in the suit to modify.  See id.
§ 156.401(b).  

          A
trial court commits reversible error if (1) the amount of child support ordered
by the court varies from the amount computed by applying the percentage
guidelines and (2) the court does not (a) state whether the application of the
guidelines would be unjust or inappropriate, (b) state in the order the monthly
net resources of the obligor, (c) state in the order the monthly net resources
of the obligee, (d) state in the order the percentage applied to the obligor’s
net resources, and (e) the specific reasons the amount of child support per
month ordered by the court varies from the amount computed by applying the
statutory guidelines.  Id. § 154.130 (West 2009).

          B.      Analysis

          Under
the statutory guidelines, George was obligated to pay 25% of his monthly net
resources for both of his children for the months May through September and 20%
of his monthly net resources for the remaining child after September.  See
Tex.
Fam. Code Ann. § 154.125
(West 2009).  According to Angela, George’s child support obligation based on the
statutory guidelines would be approximately $1,600 per month for two children
and then $1,275 per month for one child. 
According to George’s trial testimony, his child support obligation
based on the statutory guidelines would be approximately $1,415.34 per month
for two children and $1,132.27 per month for one child.  

          The
trial court modified George’s child support obligation to $1,200 per month in
support of one child, starting in May. 
Regardless of whether the calculations by Angela or George are correct,
the trial court’s modification of George’s child support obligation differs
from the statutory guidelines in two respects. 
First, for the months of May through September, the trial court ordered
George to make payments in support of only one child despite the fact that the
oldest child had yet to turn eighteen.[6]  Second, for the months after September, the
statutory guidelines would require George to pay 20% of his net monthly
resources yet the $1,200 per month actually ordered represents a child support
obligation of 18.8% of George’s net monthly resources based on Angela’s
calculations and 21.2% based on George’s calculations.  Finding that the trial court ordered a child
support obligation that varies from the amount required under the statutory
guidelines and that the trial court failed to state the statutorily required
findings, we conclude that the trial court committed reversible error.  Id.
§ 154.130.  We, therefore, remand for the
trial court either to abide the statutory guidelines or to make the statutorily
required findings concerning Angela’s petition to modify George’s child support
obligation.

          We
sustain George’s second issue.

Conclusion

          We reverse and remand the modification
of the child support obligation and affirm the remainder of the trial court’s
judgment.

 

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Justices
Jennings, Alcala, and Sharp.











[1]           “A child support order for more than one
child shall provide that, on the termination of support for a child, the level
of support for the remaining child or children is in accordance with the child
support guidelines.”  Tex Fam. Code Ann. § 154.127(a) (West
2009).





[2]           Based
on tax and pay documentation for 2008 received from George, Angela’s counsel
calculated George’s average monthly gross income to be $9,005 ($108,060
annually) and his average monthly net income to be $6,535.  After subtracting an estimated $150 for
monthly health insurance, Angela’s counsel determined George’s average monthly
net resources to be $6,385.





[3]           Under
the statutory guidelines, the amount owed in support of one child is equal to
20% divided by 25%, multiplied by the amount owed in support of two
children.  See Tex. Fam. Code Ann.
§ 154.125 (West 2009).





[4]           Under
the statutory guidelines, the amount owed in support of two children is equal
to 25% divided by 20%, multiplied by the amount owed in support of one
child.  See Tex. Fam. Code Ann.
§ 154.125.





[5]           George intimates that his mistaken belief was the result
of comments made by Angela; however, there is no evidence in the record that
Angela made misrepresentations to George.

 





[6]           Even
if we were to interpret the court’s order of $1,200 per month to be in support
of both children, it would nevertheless fall far short of the 25% provided for
by the statutory guidelines.