**Opinion issued December 10, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-22-00834-CV**

————————————

**KYLE LEE-YOUNG, Appellant**

**V.**

**ROBERTA PATERSON, Appellee**

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-78104**

---

**MEMORANDUM OPINION**

This appeal arises from a suit affecting the parent–child relationship. In a single issue, Kyle Lee-Young argues the trial court abused its discretion by ordering him to pay $1,078.10 per month in child support and $49,023.64 in retroactive child support because the record contains no evidence regarding his net resources.

We affirm.

## BACKGROUND

Monthly and retroactive child support were the lone contested issues between the parties, who tried these issues to the bench in late August 2022. Two witnesses testified: the petitioner, Roberta Paterson, and the respondent, Kyle Lee-Young.

### Paterson's Testimony

Paterson testified that she and Lee-Young separated a little over three and a half years before trial. Lee-Young did not provide any financial support for their daughter, who was eight years old at the time of trial, from 2018–21. Nor did Lee-Young provide clothing or other items for his daughter during this period of time.

Paterson testified that from 2021 until trial, Lee-Young paid $6,329.

According to Paterson, Lee-Young is employed as "a party planner, MC, and club promoter." He has been employed in these roles for the past 15 years or so.

The following exchange then took place about Lee-Young's income:

Q.    And when you and he were in a relationship, that's how he was employed as well; is that correct?

A.    That is correct.

Q.    Did you ever have the opportunity to speak to Mr. Young about how much money he made from his job?

A.    Yes, I did.

Q.    And what was his response?

A.    Around $7,500 monthly.

Q. Okay. And do you believe that that's indeed the amount that he was making?

A. Yes.

Q. And what are you basing that belief on?

A. On what he told me.

Q. Okay. Have you ever seen any money exchange?

A. Yes, I have.

Q. And when was that?

A. Throughout the duration of our relationship.

Q. And would it be consistent with someone making roughly about $7,500?

A. That is correct.

Q. How was Mr. Young paid?

A. Only cash.

Paterson further testified that she believes Lee-Young currently makes the same amount of money. She based this belief on his social media, which she stated showed he continued to be a club promoter and was as busy or busier doing so.

During Paterson's testimony, her counsel introduced into evidence an exhibit, without objection, that calculated Lee-Young's child-support obligation. Taking into account federal income tax and the like, this exhibit showed a net income of $5,878.91 per month. Based on his net income and accounting for the $113 per month he was obligated to spend on his daughter's healthcare insurance, Lee-

Young's monthly child-support obligation was calculated to be $1,153.18, which represented 20 percent of his monthly net income minus the insurance cost.

Employing the preceding monthly child-support calculation, Paterson requested an award of retroactive support for the period in which Lee-Young did not provide financial support for their daughter. This unpaid amount was $49,023.64.

Paterson did not request a lump-sum payment of the unpaid amount. Instead, she requested that he pay an additional $100 per month until it was paid in full.

On cross-examination, Paterson conceded that she had no personal knowledge as to what amount of money Lee-Young had earned after their separation. She likewise conceded that she lacked personal knowledge as to his present income.

Paterson was asked whether she was aware of Lee-Young's 2019 and 2020 tax filings, and she said she was not. But she also testified that she has not seen these tax returns because Lee-Young had not provided them to her. In addition, she added that during their relationship, Lee-Young did not include cash he received from his promotor activities in the income he reported to the Internal Revenue Service.

**Lee-Young's Testimony**

Lee-Young testified that he hosts parties and sometimes throws them for a living, and that he likewise did so during the period for which he still owes support. According to Lee-Young, he has done so for a long time and he is paid in cash.

4

During Lee-Young's testimony, his counsel tried to introduce both testimony and documents—a financial statement and tax filings for 2019 and 2020—regarding his past and present income. Paterson objected on the ground that Lee-Young did not timely produce this information or these documents in discovery. Lee-Young agreed that he had not done so, but he argued that he had good cause for the delay. Specifically, he argued his counsel "was backed up with cases due to COVID." The trial court sustained Paterson's discovery objection and excluded the evidence.

## Trial Court's Findings and Order

Based on the evidence before it, the trial court found that Lee-Young's monthly gross income was $7,500. The trial court ordered Lee-Young to pay $1,078.10 in child support per month. It further found he owed $49,023.64 in unpaid child support, and it ordered him to pay $100 of this unpaid amount per month.

## JURISDICTION

Lee-Young filed his notice of appeal two days after the 30-day jurisdictional deadline. *See* TEX. R. APP. P. 26.1 (providing appeal notice is generally due 30 days after judgment signed); *OHK Global v. Motaghi*, 679 S.W.3d 738, 742–43 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (holding appellate court lacks subject-matter jurisdiction absent timely appeal notice). When, as here, an appellant files an appeal notice that is untimely but within 15 days of the deadline, this court treats the untimely notice as an implied motion for an extension of time to file the notice of

5

appeal. *Gantt v. Harris Cty.*, 674 S.W.3d 553, 558 (Tex. App.—Houston [1st Dist.] 2023, no pet.). But we may only grant such an implied motion for an extension of time if the appellant gives us a reasonable explanation for the untimeliness of his notice of appeal. *Id.*; *Hernandez v. Lopez*, 288 S.W.3d 180, 184 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Any explanation that does not amount to deliberate disregard generally qualifies as reasonable. *Gantt*, 674 S.W.3d at 558.

After filing his late appeal notice, Lee-Young timely filed a formal motion for extension of time, in which his counsel explained that his notice of appeal was late due to an inadvertent calendaring error resulting from the receipt of electronic notice of the trial court's judgment several days after the trial court signed the judgment. This is a reasonable explanation. *See Hernandez*, 288 S.W.3d at 184 (accepting as reasonable counsel's explanation of inadvertent miscalculation of due date). Hence, we have subject-matter jurisdiction over this appeal and now turn to the merits.

## EVIDENCE SUPPORTING CHILD-SUPPORT AWARDS

Lee-Young argues the trial court erred in ordering him to pay current and retroactive child support in the amounts it did. He maintains that the sole evidence the trial court heard regarding his ability to pay these amounts consisted of the testimony of Paterson, who lacks personal knowledge regarding his net resources. Lee-Young asserts that Paterson's testimony about his resources is a guess, and that such speculative testimony is not legally sufficient evidence to support the awards.

## Standard of Review

We review a trial court's judgment awarding child support, including an award of retroactive child support, for an abuse of discretion. *Marquez v. Moncada*, 388 S.W.3d 736, 739 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* Likewise, as in all other contexts, a trial court abuses its discretion when it misinterprets or misapplies the law because it does not have any discretion to incorrectly interpret or apply the law. *See e.g.*, *In re Roisman*, 651 S.W.3d 419, 440 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding).

Under this standard of review, evidentiary sufficiency challenges are not independent points of error. *Marquez*, 388 S.W.3d at 739. Instead, sufficiency challenges are incorporated into our abuse-of-discretion review, which first inquires whether the trial court had sufficient information to inform its exercise of discretion and then inquires whether the trial court erred in its application of discretion. *Id.*

Generally speaking, so long as some evidence of a substantive and probative character supports the judgment, the trial court does not abuse its discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). But when evaluating whether some evidence of a substantive and probative character supports the judgment, we essentially consider the sufficiency of the evidence. *See id.* at 726–27 (explaining that appellate courts review most family-law issues for

abuse of discretion, under which sufficiency of evidence remains relevant, and elaborating that trial court does not abuse discretion when some evidence of substantive and probative character supports its judgment and then articulating the traditional legal standards for reviewing legal sufficiency and factual sufficiency).

When, as here, an appellant argues that the trial court abused its discretion because no evidence supports the trial court's child-support findings, and the trial court therefore lacked sufficient information to inform the exercise of its discretion, we will overrule his challenge if any evidence supports them. *Brejon v. Johnson*, 314 S.W.3d 26, 30 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In reviewing for legal sufficiency, we consider only the evidence and inferences that support the challenged findings, and we disregard all contrary evidence and inferences. *Id.*

To the extent an appellant raises a factual-sufficiency issue with respect to child-support findings, we consider all the evidence and inferences that support and contradict them. *Id.* We will set aside the challenged findings only if the evidence standing alone is too weak to support them or if they are so against the overwhelming weight of the evidence that they are manifestly unjust and clearly wrong. *Id.*

In a bench trial, like the one before us, the trial court acts as the factfinder. As the factfinder, the trial court is the sole judge of the witnesses' credibility and decides how much weight to give their testimony. *McLane v. McLane*, 263 S.W.3d 358, 366

(Tex. App.—Houston [1st Dist.] 2008, pet. denied). When the trial court's judgment turns in part on the credibility of the witnesses, we must affirm the judgment. *Id.*

**Analysis**

Lee-Young solely challenges the legal sufficiency of the evidence regarding his net resources, which are the basis of his child-support obligations. He does not argue the trial court misapplied the Family Code's child-support provisions. Nor does he argue the trial court erred in excluding his evidence of his current income.

The crux of Lee-Young's no-evidence argument is that the record lacks any evidence whatsoever as to his income at or near the time of trial. Reasoning that Paterson admitted she had no personal knowledge on this subject, Lee-Young maintains that the trial court relied on sheer speculation as to his net resources.

We disagree. Paterson testified that Lee-Young had been in the same profession for a decade and a half. She stated he made about $7,500 per month during their relationship. She said Lee-Young told her so, and she saw the money he earned firsthand. At trial, Lee-Young did not dispute he earned this amount in the past. Nor did he dispute Paterson's testimony that he told her about his income during their relationship or that she saw for herself how much he earned during this period.

Evidence of a person's recent past earnings is probative of his present income. *See, e.g.*, *Ayala*, 387 S.W.3d at 725, 728–29 (crediting wife's testimony about husband's income in the year preceding divorce trial as being probative of husband's

9

net resources even though they had stopped living together many years beforehand). Evidence of recent past earnings may be especially probative of present income when the person has consistently engaged in the same work over a lengthy period of time. *See id.* at 728–29 (noting wife's trial testimony that husband had been employed at same place and in same capacity for more than three decades). Likewise, evidence that a person was consistently employed in the same line of work during a period of time is probative of the income he earned during this period and therefore will support an award of retroactive child support for this period. *Id.*

Paterson introduced this very type of evidence: recent past earnings and consistent employment in the same work over time. It is some evidence of Lee-Young's past and present net resources. Therefore, the evidence is legally sufficient to support the trial court's award of current and retroactive child support. *See id.*

The less recent the evidence of past earnings is, the less probative it becomes of present income. At some point, it may be so distant in time as to lose all probative value. Here, Paterson's testimony about Lee-Young's past earnings dated from their relationship, which ended more than three years before trial. However, both Paterson and Lee-Young testified that he continued to be employed in the same line of work. In addition, Paterson testified that his social media indicated that he was as busy professionally as he had been when they were together or perhaps even busier. Together, this testimony constitutes some evidence that Lee-Young's income at the

time of trial remained the same as it had been during his relationship with Paterson. Admittedly, this evidence is approximate or imprecise. But a factfinder may calculate a person's net resources based on imprecise information. *Id.* at 727.

To be sure, the evidence admitted at trial regarding Lee-Young's present and past earnings was not conclusive or indisputable. It remained subject to contradiction. But the record lacks any contradictory evidence. When, as here, legally sufficient evidence of past and present earnings is uncontradicted, it will ordinarily be factually sufficient as well because factual sufficiency generally turns on a neutral evaluation of the evidence for and against the challenged findings. *See id.* at 725, 728–29 (holding uncontroverted testimony of wife at trial husband failed to attend was sufficient to support trial court's findings on current and retroactive support); *see also Brejon*, 314 S.W.3d at 30 (specifying that appellate court will set aside finding only if evidence is too weak to support finding or if finding is so against overwhelming weight of evidence as to be manifestly unjust and clearly wrong).

Lee-Young does not explicitly argue the evidence is factually insufficient. But his trial position and appellate briefing could be construed together as an assertion that the evidence is either legally or factually insufficient to show his current income in the absence of his financial information statement and tax returns, which the trial court excluded due to his failure to timely produce them in pretrial discovery.

However, the law does not insist on any particular type of proof concerning income or other resources as a prerequisite to legal sufficiency. *See In re J.M.M.*, 549 S.W.3d 293, 299 (Tex. App.—El Paso 2018, no pet.) (rejecting appellant's argument that trial court erred in not considering his tax returns and instead relying on other evidence in deciding amount of child support he was obligated to pay). And evidentiary-sufficiency review turns on the evidence actually admitted at trial, not evidence that could have been admitted but was not. *See in re A.J.D.-J.*, 667 S.W.3d 813, 831–32 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (holding appellate court generally cannot reverse for legal or factual insufficiency of the evidence based on evidence that could have been but was not introduced at trial). Thus, the absence of Lee-Young's financial information statement and tax returns from the record does not adversely affect the sufficiency of the evidence that was admitted at trial.

In any event, even if the trial court had not excluded Lee-Young's evidence, the trial court would not have been obliged to credit this information instead of Paterson's testimony. As factfinder, the trial court necessarily must resolve conflicts in the evidence. *McLane*, 263 S.W.3d at 366. While a factfinder might often choose to credit documentary evidence created outside of litigation, like tax returns, over imprecise testimony about income, we note that it was undisputed that Lee-Young is paid in cash and Paterson testified that Lee-Young does not report all his income. Hence, the evidence admitted at trial casts doubt on his excluded tax documents.

12

On this record, some evidence of a substantive and probative character supports the trial court's child-support awards. Thus, the trial court did not abuse its discretion in making these awards. We overrule Lee-Young's sole appellate issue.

## CONCLUSION

We affirm the trial court's judgment.


Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Goodman and Guerra.