COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| IN THE INTEREST OF N.T., a child. | § | |
|---|---|---|
| | § | No. 08-09-00063-CV |
| | § | Appeal from the |
| | § | 383rd District Court |
| | § | of El Paso County, Texas |
| | § | (TC# 2006CM4760) |
| | § | |

**O P I N I O N**

Appellant, Omar Thomas, appeals the referring court's determination of child support for his daughter, Natalia Thomas. In six issues on appeal, Appellant complains of the legal and factual sufficiency of the evidence, alleges that the referring court improperly deviated from the statutory child-support guidelines, and contends that the referring court erroneously considered inadmissible testimony. For the following reasons, we affirm.

**BACKGROUND**

While working as the publications coordinator for the athletic program at the University of Texas at El Paso (UTEP), Appellee, Leah Wayne, met Appellant, a basketball player at UTEP. Although they never married, Appellant and Appellee had a daughter, Natalia. Natalia was born on November 21, 2005, and resided with Appellee. In 2008, Natalia was diagnosed with acute lymphoblastic leukemia, which will require two-and-a-half years of chemotherapy treatment.

*Child Support*

Appellant made some payments to Appellee for child support; however, the amount and number of those payments were disputed by the parties. According to Appellee, Appellant only

gave her $300 in 2005, that payment occurring sometime in September or October. Appellant, on the other hand, testified that he also paid her $200 in November and December of 2005. For 2006, Appellee alleged that Appellant gave her between $1,000 and $1,500 for the entire year, and for 2007, the parties agreed that Appellant paid Appellee $200 each month from February until May.

*Appellant's Income*

The evidence of Appellant's income was also conflicting. After playing basketball for UTEP, Appellant was drafted by the Continental Basketball League. However, he declined to pursue a position in that league. He also chose not to enter the NBA's developmental league, reasoning that he could make "triple" than the $24,000 cap made by the league's "A" players each year. Appellant wanted to build his resume for a run at the "big money" in the European League.

After Appellant's tryout with the NBA in Seattle, he accepted a player position with the Coca Cola Tigers in the Philippines. Appellant remained with the team for two months – November and December of 2005 – and he contended that his total earnings there were $3,500, less a 10 percent agent's fee. Appellant, however, did not present any documentary evidence of that amount because he was paid "under the table." In contrast, Appellee testified that Appellant told her that he received at least $10,000 each month for playing in that league.

Appellant returned to El Paso in January 2006, but in March or April, he moved to Austin to play for the NBA developmental league for three to four weeks. According to Appellant's W-2, he received a total of $2,642.62 for that period. Appellant then went to play for a team in the Dominican Republic. His three weeks there allegedly earned him $2,000, but again, Appellant produced no documentation of those earnings.

Appellant returned to UTEP for the summer of 2006. There, he completed his degree in communications. Then in September 2006, Appellant was contracted to play for a team in Italy. The

contract was for an eight-month season, beginning in September 2006 and ending in April 2007.
According to Appellant, he earned $1,600 each month, and the team provided him with a furnished
two-bedroom apartment, a car, healthcare, and four round-trip plane tickets to the United States.
Appellant's contract was renewed for a second season with an alleged increased pay of $1,700 each
month, beginning September 2007 and lasting until May 2008. Contending that he made less than
minimum wage, Appellant noted that his sister sent him money periodically. However, Appellee
testified that Appellant told her that he made between $80,000 and $90,000 in the first season, that
he was a "hot commodity," that the team wanted him to stay for a second season, and that he would
not take less than $130,000 for the second season.

During the summer months in 2007, Appellant returned to El Paso, but did not work,
believing that because he played nine hard months, he was not obligated to work during the summer.
Appellant did not do anything else to supplement his income. While in El Paso, he bought a house
with his fiancee for $159,125. According to Appellant, his sister contributed $20,000 to the house,
which she paid to him in installments of $10,000, $5,000, $3,000, and $2,000.

*Procedural History*

After Appellee filed her petition to adjudicate paternity and assess child support, the matter
was referred to the associate judge. The associate judge recommended that Appellant pay $410 per
month in child support, and $3,500 in arrears. Appellee appealed the associate judge's
recommendations, asserting that neither the monthly child support nor the arrearage was calculated
in accordance with the statutory child-support guidelines. The referring court determined that the
application of the guidelines would be unjust or inappropriate in this case, found that Appellant had
net resources of $2,200, imputed income to Appellant in the amount of $7,000 per month, and
ordered Appellant to pay $1,500 per month in child support and $30,172.94 in arrears. Appellant

submitted findings of fact for the court, and the referring court adopted those verbatim.

## SUFFICIENCY OF THE EVIDENCE

In Issues One, Three, and Six, Appellant contends that the evidence is legally and factually insufficient to support the referring court's findings. Specifically, Appellant challenges the referring court's determination of net resources in the amount of $2,200 (Issue One), an income imputation of $7,000 per month (Issue Three), and an arrearage amount of $30,172.94 (Issue Six). After reviewing the record, we find the evidence both legally and factually sufficient to support the findings.[1]

### *Standard of Review*

When considering the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In so doing, we remain mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Accordingly, when the evidence is conflicting, it is the province of the trier of fact to resolve

---

[1] Section 154.125 of the Family Code provides that when the obligor's monthly net income is less than $7,500, the trial court shall presumptively apply the child-support guidelines, which require the obligor to pay twenty percent of his monthly net income for one child. *See* TEX. FAM. CODE ANN. § 154.125 (Vernon Supp. 2010). Appellee's petition, however, was filed before the statute was amended to increase the amount to $7,500. *See* Act of Apr. 20, 1995, 74th Leg., R.S. Ch. 20, § 154.125, 1995 TEX. GEN. LAWS 113, 162 (setting the amount at $6,000), *amended by* Act of June 15, 2007, 80th Leg., R.S. Ch. 620, § 154.125, 2007 TEX. GEN. LAWS 1188, 1189 (increasing amount to $7,500). Nevertheless, we recognize that the trial court has discretion to exceed the guidelines when the obligor's income is greater than the statutory cap. TEX. FAM. CODE ANN. § 154.126. In that instance, the court shall apply the percentage guidelines to the net resources that do not surpass the cap. Without further reference to the percentage recommended by the guidelines, the court may order additional support depending on the income of the parties and the proven needs of the child, but in no event may require the obligor to pay 100 percent of the proven needs of the child. *Id.* However, Appellant does not contend on appeal that the trial court assessed an amount beyond what the statute required at the time Appellee's petition was filed, nor does he complain that the support order exceeds the proven needs of the child, and we lack authority to review unassigned error. *See Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006); *Allright v. Pearson*, 735 S.W.2d 240, 241 (Tex. 1987) (per curiam); *American Gen. Fire & Cas. Co. v. Weinberg*, 639 S.W.2d 688, 688 (Tex. 1982). Therefore, we will simply review the issue brought by Appellant, namely, whether the evidence presented by the parties at the hearing supports the trial court's finding of net resources in the amount of $2,200 and an imputation of income in the amount of $7,000 per month.

the conflict. *Id*. at 820. Moreover, it is the province of the trier of fact to draw from the undisputed evidence whatever inferences it wishes so long as more than one inference is possible. *Id*. at 821. However, if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. *Id*. "In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review." *In re J.A.H.*, 311 S.W.3d 536, 540 (Tex. App. – El Paso 2009, no pet.). The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

A factual-sufficiency review, however, requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the contrary evidence as to be manifestly unjust. *In re J.A.H.*, 311 S.W.3d at 541. If there exists sufficient competent evidence of probative force to support the finding, it must be sustained. *Id*.; *Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex. App. – El Paso 1981, no writ). Similar to a legal-sufficiency analysis, it is not within our province to interfere with the fact finder's resolution of conflicts in the evidence or judgment on the weight and credibility of a witness's testimony. *In re J.A.H.*, 311 S.W.3d at 541. Indeed, where there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *Id*.; *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex. App. – El Paso 1992, writ denied).

Unless the complaining party demonstrates a clear abuse of discretion, we will not disturb child-support findings made by the trial court. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re J.A.H.*, 311 S.W.3d at 540. The applicable two-part test is whether the trial court had sufficient information upon which to exercise its discretion, and whether the trial court erred in its

application of that discretion. *In re J.A.H.*, 311 S.W.3d at 540; *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App. – El Paso 1998, no pet.). The traditional sufficiency inquiry applies to the first question, and if sufficient evidence exists, we then decide whether the trial court made a reasonable decision that was neither arbitrary nor unreasonable. *In re J.A.H.*, 311 S.W.3d at 540. Merely because the trial judge decided a matter within her discretionary authority in a different manner than us does not demonstrate that an abuse of discretion has occurred. *Id*. at 541; *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965).

### *Net Resources and Imputable Income*

The trial court has broad discretion in determining child-support payments. *In re J.D.D.*, 242 S.W.3d 916, 919 (Tex. App. – Dallas 2008, pet. denied); *Reyes v. Reyes*, 946 S.W.2d 627, 629 (Tex. App. – Waco 1997, no pet.). Some of the factors a court may consider in assessing payments include the needs of the child, the ability of the parents to contribute to the child's support, any financial resources available for support, and the amount of possession and access to the child. TEX. FAM. CODE ANN. § 154.123(b) (Vernon 2008). In calculating the net resources for purposes of determining child-support liability, the court may look to all wage and salary income, self-employment income, and other income being received. *See* Acts 1995, 74th Leg., ch. 751, § 41, eff. Sept. 1, 1995 (current version at TEX. FAM. CODE ANN. § 154.062(b) (Vernon Supp. 2010)).

By statute, the obligor is required to furnish information sufficient to accurately identify his net resources and ability to pay child support. TEX. FAM. CODE ANN. § 154.063 (Vernon 2008); *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex. App. – Dallas 2006, no pet.). Nevertheless, the trial court is not required to accept the obligor's evidence of income and net resources as true. *Garner*, 200 S.W.3d at 308; *Hardin v. Hardin*, 161 S.W.3d 14, 23 (Tex. App. – Houston [14th Dist.] 2004, no pet.), *judgm't vacated, op. not withdrawn*, No. 14-03-00342-CV, 2005 WL 310076 (Tex. App.

– Houston [14th Dist.] Feb. 10, 2005, no pet.) (mem. op.). Indeed, the trial court may properly determine that an obligor has higher net resources than alleged based on testimony by the obligee and other evidence in the record. *Burney v. Burney*, 225 S.W.3d 208, 214 (Tex. App. – El Paso 2006, no pet.). Moreover, the obligor who is qualified to obtain gainful employment cannot evade his support obligation by voluntarily remaining unemployed or underemployed. *Eggemeyer v. Eggemeyer*, 535 S.W.2d 425, 427-28 (Tex. Civ. App. – Austin 1976), *aff'd*, 554 S.W.2d 137 (Tex. 1977). Therefore, a trial court may order the obligor to pay child support beyond the amount the obligor's income would ordinarily indicate if he could potentially earn more money but has intentionally chosen not to do so. *See* TEX. FAM. CODE ANN. § 154.066 (Vernon 2008); *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 826 (Tex. App. – Fort Worth 2007, no pet.).

Here, the record reflects that Appellant did not file any tax returns. Nor did he produce any records of his income from his employment in the Philippines. Rather, he simply produced one W-2 for his employment in the NBA developmental league, which showed total earnings of $2,642, and an incomplete, unsigned contract from one of his two years of employment with an Italian basketball team. However, Appellant testified that since November 2005, he received a total of $3,500 for his two-month employment in the Philippines, $2,642 for his three- to four-week employment in the NBA Development League, $2,000 for his three-week employment in the Dominican Republic, and $28,100 for his employment in Italy – $1,600 per month from September 2006 to April 2007, and $1,700 per month from September 2007 to May 2008. According to Appellant, he made less than minimum wage, garnered no endorsements, and his sister periodically sent him payments to help him out. He further stated that although the basketball season consisted of only nine months, he did not look for or obtain work in the off-season, despite his college degree in communications: "I play nine hard months. I don't think I was obligated to work 12 months out of the year."

In contrast, Appellee testified that Appellant was provided housing while employed in the Philippines and told her that he was making at least $10,000 each month. Appellee further stated that Appellant told her that he made between $80,000 and $90,000 in his first season in Italy, that he was a "hot commodity," that the team really wanted him back, and that he would not accept less than $130,000 for the second season. Moreover, Appellant's Italian contract showed that the team provided him with a furnished apartment, a car, healthcare, and four round-trip tickets to the United States. And other evidence in the record showed that Appellant, in June 2007, purchased a house in El Paso with his fiancee for $159,125. Appellant testified that his sister provided payments in the amount of $10,000, $5,000, $3,000, and $2,000 in 2007, to help Appellant with the house.

After considering the evidence, we find it legally and factually sufficient to support the trial court's imputation of $7,000 per month in income and $2,200 in net resources. Given Appellant's failure to produce documents of his earnings, the trial court was forced to choose between the conflicting parties' testimonies. It is clear that the trial court chose not to believe Appellant's testimony. *See Garner*, 200 S.W.3d at 308 (reasoning that trial court "was not required to accept [obligor's] evidence of his income and net resources"); *Hardin*, 161 S.W.3d at 23 (noting that trial court need not accept obligor's evidence of his income and net resources "as true"). Rather, the trial court chose to accept Appellee's testimony that Appellant made $10,000 while employed in the Philippines, $80,000 to $90,000 for his first year of employment in Italy, and more than that for his second year there. Moreover, the trial court could have imputed the periodic payments sent to Appellant from his sister as income and found that Appellant was intentionally unemployed during the off season despite having a college education. *See* TEX. FAM. CODE ANN. §§ 154.062, 154.066.

In short, given the evidence presented, the trial court was within its discretion to find that Appellant's earnings or potential earnings was around $7,000 per month and that his net resources

was $2,200. Therefore, we find the evidence legally sufficient to support the trial court's findings. Moreover, after reviewing all the evidence, we do not find the trial court's findings to be against the great weight and preponderance of the contrary evidence as to be manifestly unjust. As such, the evidence is factually sufficient to support the trial court's findings. Issues One and Three are overruled.

*Arrearage*

In Issue Six, Appellant challenges the sufficiency of the evidence to support the referring court's finding of $30,172.94 in arrears. Upon a finding of parentage in a paternity action, a trial court may order retroactive child support. *See* TEX. FAM. CODE ANN. § 160.636(g) (Vernon 2008). In ordering retroactive child support, the trial court is generally limited to awarding the amount due for the four years preceding the date the petition was filed. *See* TEX. FAM. CODE ANN. § 154.131(c) (Vernon 2008). Further, the trial court should consider the net resources of the obligor during the relevant time period in determining the amount of retroactive child support to be ordered. *Id*. at § 154.131(b).

It is undisputed that the child was born on November 21, 2005, and that the $1,500 per month child-support judgment was entered 39 months later on February 6, 2009. Moreover, we have already determined that sufficient evidence was presented from which the trial court could find that Appellant earned or had the potential to earn $7,000 each month. According to Appellee's testimony, the only payments she ever received from Appellant consisted of no more than a total of $2,600. Moreover, Appellant testified that he paid Appellee $200 in November and December of 2005. Therefore, the evidence, at the very least, supports an arrearage in the amount of $55,500.[2] Accordingly, the evidence is certainly legally and factually sufficient to support the trial court's

---

[2] $1,500 multiplied by 39 months, less a sum of $3,000, equals $55,500.

finding of the substantially less sum of $30,172.94. Issue Six is overruled.

## COMPLIANT FINDINGS

Appellant's second issue asserts that the trial court's findings do not comply with Section 154.130 of the Family Code as enacted when Appellee filed her petition. According to that statute, a trial court, upon ordering child support that varies from the amount that would result if the guidelines were applied, is required to make certain findings such as the net monthly resources of the obligor and obligee, the amount of support that would result if the guidelines were followed, the percentage applied by the court to the obligor's net monthly resources that yields the child-support obligation set by the court, and the specific reasons why the amount ordered by the court varies from the amount called for by application of the guidelines. *See* Acts 2001, 77th Leg., ch. 1023, § 8, eff. Sept. 1, 2001 (current version at TEX. FAM. CODE ANN. § 154.130(a)(3), (b) (Vernon Supp. 2010)). Such findings are mandatory and the failure to make them when required constitutes reversible error. *In re S.B.S.*, 282 S.W.3d 711, 717 (Tex. App. – Amarillo 2009, pet. denied).

After reviewing the findings made in this case, we determine that they comply with the statutory provision. Indeed, the trial court found that:

1. the application of the guidelines in this case would be unjust or inappropriate;

2. the amount of net resources available to [Appellant] pre [sic] month is $2,200.00;

3. the amount of net resources available to [Appellee] per month is $0;

4. the amount of child support payments per month that is computed if the percentage guidelines of section 154.125 of the Texas Family Code are applied to the first $7,500 of [Appellant's] net resources is $410.00;

5. the percentage applied to the first $7,500 of [Appellant's] net resources for child support by the actual order rendered by the Court is 25 percent; and

6. the specific reasons that the amount of support per month ordered by the

Court varies from the amount computed by applying the percentage guidelines of section 154.125 of the Texas Family Code are:

1.    In accordance with the findings of the Associate Judge, [Appellant's] net income is $2,200 per month.

2.    [Appellant] is intentionally underemployed based on his earnings of $7,000.00 per month while employed in the Philippines from October 21, 2005 until January 8, 2006.

3.    The Court imputes income to [Appellant] of $7,000.00 gross per month.

In short, the second finding states Appellant's net resources, the third finding states Appellee's resources, the fourth finding states the amount of support that would result if the guidelines were followed, the fifth finding states the percentage ordered by the court to be applied to Appellant's resources, and the sixth finding states specifically why the trial court is deviating from the guidelines. Thus, the findings comply with former Section 154.130.

Nevertheless, Appellant contends that the trial court's reasons for deviating from the guidelines are not specific enough to relay how the judge arrived at the amounts that he did. However, Appellant cites no case law showing how detailed the findings must be, he does not refer us to other courts that have found similar findings to be lacking, and he did not request that the trial court make additional findings on that issue. Moreover, as we explained above in our review of the sufficiency of the evidence, there was conflicting testimony as to how much Appellant earned while employed in the Philippines. Appellant testified that he only made $3,500 whereas Appellee testified that Appellant made $10,000 each month. The trial court was in the best position to judge the credibility of the witnesses and to impute an appropriate amount based on all the evidence presented. We discern no abuse of discretion in this regard. Issue Two is overruled.

**RELIANCE ON PRIOR HEARING**

In Issue Four, Appellant complains that the referring court erred by reviewing the testimony elicited before the associate judge. Appellee responds that Appellant's affirmative acquiescence to the trial court's conduct without objection waived any appellate complaint in this regard. We agree.

Issues appealed from an associate judge's ruling are heard *de novo* before the referring court. TEX. FAM. CODE ANN. § 201.015(c) (Vernon Supp. 2010). A trial *de novo* is a new and independent action on those issues raised. *Chacon v. Chacon*, 222 S.W.3d 909, 914 (Tex. App. – El Paso 2007, no pet.). Therefore, the party with the burden of proof, having prevailed before the associate judge, must still carry her burden in a *de novo* hearing before the referring court. *Attorney General of Texas v. Orr*, 989 S.W.2d 464, 467 (Tex. App. – Austin 1999, no pet.). Generally, the judgment of the referring court on those issues appealed must be based solely on the evidence presented at the *de novo* hearing. *Id*. at 468 n.2. However, the Family Code allows the referring court to consider the record from the hearing before the associate judge. TEX. FAM. CODE ANN. § 201.015(c).

Here, the referring court asked the parties' attorneys if they recalled what Appellant's testimony was before the associate judge. When the attorneys replied that they were not present at the hearing, the referring court stated that he wanted to review the record at that prior hearing to determine what Appellant testified to that he earned. The referring court believed that the Code allowed him to do so, and Appellant's attorney expressly agreed that he had such authority. At no time did Appellant object that the referring court could not review the prior testimony.

To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint and obtain an adverse ruling thereon. TEX. R. APP. P. 33.1(a). Failure to do so waives review of the complained-of error on appeal. *See Phillips v. Phillips*, 296 S.W.3d 656, 674 (Tex. App. – El Paso 2009, pet. denied). In this case, Appellant never objected to the trial court's intent to review the transcript of the

associate judge's hearing. Therefore, even if the trial court was without authority to review the transcript, an issue we do not reach, Appellant certainly cannot complain, absent an objection, for the first time on appeal of the trial court's alleged improper conduct. *See In re K.C.B.*, 280 S.W.3d 888, 893 (Tex. App. – Amarillo 2009, pet. denied) (overruling complaint that referring court used the reporter's record of the associate judge's hearing when appellant never objected to the trial court's conduct); *Neely v. Commission for Lawyer Discipline*, 302 S.W.3d 331, 351 (Tex. App. – Houston [14th Dist.] 2009, pet. denied) (overruling complaint that the trial judge engaged in ex parte communication with another judge concerning a prior disciplinary hearing involving attorney when attorney made no objection to those comments); *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 760 (Tex. App. – Austin 2006, pet. denied) (racehorse owner waived right to complain on appeal about carrying burden of proof at State Office of Administrative Hearings hearing where owner acquiesced to burden of proof at start of hearing). Issue Four is overruled.

## SCOPE OF APPEAL

Appellant's fifth issue asserts that the referring court erroneously considered matters beyond the scope of the notice of appeal. Specifically, he complains that because Appellee's notice of appeal did not allege the matters of the child's illness or Appellant's underemployment and imputed income, those issues should not have been presented to the referring court. But once again, we find Appellant's complaint not preserved for our review.

Concerning the child's illness, we note that Appellant's objection before the referring court was that the matter was not relevant as Appellee's pleadings did not allege that she was seeking more support than the guidelines allowed based on the child's illness. Appellant never objected that evidence of the matter went beyond the scope of the notice of appeal filed by Appellee. Therefore,

Appellant's complaint on appeal does not comport with his objection at trial.[3] *See Knapp v. Wilson N. Jones Mem. Hosp.*, 281 S.W.3d 163, 171 (Tex. App. – Dallas 2009, no pet.); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639-40 (Tex. App. – Houston [14th Dist.] 2005, pet. denied) (holding that to preserve error, party's argument on appeal must comport with its argument in trial court).

Turning to Appellant's second argument, we have reviewed the record and cannot find any objection to the evidence or argument presented on the underemployment and imputed income matters before the referring court. Instead, Appellant readily participated in asking and answering questions in this regard, and in presenting argument. Thus, those issues, even if beyond the scope of Appellee's notice of appeal, were certainly tried by consent without objection. *See* TEX. R. CIV. P. 67; *In re Marriage of Jordan*, 264 S.W.3d 850, 859 n.10 (Tex. App. – Waco 2008, no pet.). Accordingly, Appellant's second argument is not preserved for our review. *See* TEX. R. APP. P. 33.1 (to preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint and obtain an adverse ruling thereon). Issue Five is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the referring court's judgment.

GUADALUPE RIVERA, Justice

January 26, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

---

[3] Even if we were to find Appellant's complaint preserved, we note that nothing in the record indicates that the referring court considered the child's illness in assessing child support. *See Walton v. Canon, Short & Gatson*, 23 S.W.3d 143, 151-52 (Tex. App. – El Paso 2000, no pet.). In fact, the record shows that Appellant's objection to any evidence of the child's illness, which was discovered only two weeks before the final hearing, was sustained, and the final order does not reference the child's illness as a basis for the amount of child support awarded. Therefore, as Appellee notes in her brief, "the financial consequences of the leukemia are apparently reserved . . . for a later proceeding or a later motion to modify."