**Opinion issued July 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00774-CV**

———————————

**SARAH ELISE KEENEY SCHNEIDER, Appellant**

**V.**

**STEPHEN EARL SCHNEIDER, Appellee**

---

**On Appeal from the 53rd District Court**
**Travis County, Texas[1]**
**Trial Court Case No. D-1-FM-21-004332**

---

**MEMORANDUM OPINION**

Sara Elise Keeney Schneider appeals the trial court's final divorce decree dissolving her marriage to Stephen Earl Schneider. In 15 issues, Sarah contends that

---

[1] Per its docket equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 22-9083 (Tex. Sept. 27, 2022); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases); TEX. R. APP. P. 41.3.

the trial court abused its discretion by (1) denying a continuance before trial; (2) granting Stephen exclusive rights regarding their children's residence, medical treatment, and education; (3) ordering Sarah to undergo drug screening; (4) adding conditions affecting her access to the children; and (5) finding that she is intentionally unemployed and requiring her to pay child support. Because there was no error in the trial court's judgment, we affirm.

## Background

Sarah and Stephen married in 2014. They are the parents of two daughters, S.E.S. and S.E.S., who were 12 and 7 years old at the time of trial. Difficulties arose late 2020 and early 2021, including the following 2021 events:

| Feb/Mar | – | Sarah applied for but was not awarded a protective order against Stephen. |
| June | – | Sarah moved out of the family home, leaving the children with Stephen. |
| July | – | Stephen was injured in a serious boating accident. While Stephen was recovering in the hospital, Sarah moved the children to her boyfriend's home. |
| | – | Sarah filed for divorce. |
| | – | Sarah unenrolled the children from their schools and reenrolled them in another school district, in violation of a court order. |
| | – | On the same day she changed the children's schools, Sarah obtained an emergency protective order against Stephen on the allegation of family violence, which she claimed occurred in October 2020 and May 2021. The protective order prohibited Stephen from having any contact with the children. |
| Aug | – | The trial court awarded Stephen limited possession of the children. |
| Sept | – | Sarah agreed to permit the oldest daughter to live primarily with Stephen. |
| | – | While Stephen was sitting for a deposition, Sarah removed the oldest child from Stephen's home, which triggered the child's anxiety attack. |
| Oct | – | The trial court held a hearing and issued temporary orders. |

The witnesses at the October 2021 hearing to issue temporary orders included Stephen, Sarah, two school employees (A. Garcia and C. Walter), the oldest child's dance instructor (N. Smith), a plastic surgeon who was Sarah's former employer (Dr. J. McFate), one of Sarah's friends (M. Touchstone), and another of Sarah's friends who was also a former coworker (B. Meier).

The trial court found Sarah's testimony that Stephen was violent toward her in May 2021 was not credible and called into question the credibility of the alleged October 2020 incident as well. The trial court found testimony from Touchstone and Dr. McFate, which conflicted with Sarah's testimony, to be credible. Touchstone testified that Sarah had fabricated the May 2021 allegations of family violence against Stephen. The trial court also heard how Sarah attempted to influence Touchstone's testimony by sending explicit photos of Touchstone to Touchstone's employer. Next, Dr. McFate disputed some of Sarah's testimony about the alleged October 2020 incident. Only one witness, Meier, corroborated Sarah's October 2020 allegation, but the trial court did not find her credible.

The trial court entered temporary orders that appointed Stephen as the children's sole managing conservator and required Sarah to pay child support and provide health insurance. Sarah was granted standard possession but was enjoined from allowing her boyfriend, C. Bongiorno, any contact with the children. The trial court ordered that the children be transferred back to their original school and

3

enrolled in therapy. Both parties were ordered to undergo drug and alcohol testing. Lastly, L. Massad was appointed as guardian ad litem and ordered to prepare a child custody evaluation and investigate Sarah's allegations against Stephen.

In January 2022, Massad recommended that Sarah begin reunification therapy with the children, but no therapy occurred.

Later, the parties agreed to a trial date of March 2022. About three weeks before trial, Sarah moved for a continuance of the trial. The trial court held a hearing and denied her motion. Trial occurred as scheduled.

At trial, the court received testimony from Stephen, Sarah, Bongiorno, Sarah's father, Meier, Dr. McFate, Touchstone, Massad, the older child's therapist, the younger child's therapist, and the older child's dance teacher.

At the conclusion of trial, the trial court ordered that the parents be joint managing conservators but that Stephen have certain exclusive decision-making rights regarding the children, that Sarah be subject to drug testing for 24 months, and that Sarah and the children receive reunification therapy before allowing supervised possession, which would then be followed by standard possession. The trial court also enjoined Sarah from allowing the children any contact with Bongiorno.

Some three months later, in June 2022, the trial court held a review hearing and received evidence from Stephen, Sarah, Massad, and a reunification therapist (L. Rothfus). Massad testified that the relationship between Sarah and her daughters

was "not at the level of conflict" that it had been at the end of trial. She stated that, while she was not saying there should be no reunification therapy, she recognized that the children were getting along much better with Sarah and noted that, if they wait until everybody in the case is "fixed a hundred percent," they will never get there. She also recommended ending the injunction against Bongiorno's contact with the children. The reunification therapist, Rothfus, on the other hand, believed that reunification therapy should still be required.

Stephen confirmed that he previously told Massad that the relationship between the children and Sarah had improved. Stephen nonetheless continued to ask the trial court to include in its final order reunification therapy, no possession by Sarah until certain reunification therapy goals were completed, an injunction against Bongiorno, and drug testing for Sarah. Sarah testified mainly about the various prescription drugs she takes as directed by her physician.

The trial court ultimately ordered that Sarah and Stephen be joint managing conservators with Stephen having the exclusive right to (1) designate the children's primary residence; (2) consent to medical, dental, and surgical treatment involving invasive procedures; (3) consent to psychiatric and psychological treatment of the children; and (4) make decisions about the children's education.

With regard to Sarah specifically, the court ordered drug screening for two years, reunification therapy with the children, an injunction against Bongiorno

5

having contact with the children until the reunification therapist provides guidance on doing so, that her access to the children be limited subject to the completion of reunification therapy benchmarks and drug screening, monthly child support payments to Stephen, and that she provide health and dental insurance for the children.

## Motion for Continuance

In her first issue, Sarah contends that the trial court's denial of her motion for a continuance deprived her of a fair trial.

### A.    Standard of Review

On the appeal of a denied motion for continuance, the appellate court considers on a case-by-case basis whether the trial court committed a clear abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

### B.    Analysis

The trial date was by agreement. On February 7, 2022, Sarah agreed to a March 28 trial date. On March 9, she moved for a continuance. Massad, the guardian ad litem, filed her child custody evaluation on March 23. The trial court held a hearing on Sarah's motion for continuance on March 25. At the hearing, Sarah contended she needed a continuance because she had heard, three weeks earlier, that

Stephen had violated the trial court's temporary orders by drinking. Sarah argued that she needed to depose others to confirm whether Stephen was drinking and driving with the children.

Sarah alleged that she had learned of undisclosed communications between Stephen's counsel and Massad and, therefore, needed to subpoena Massad. She further alleged that she had learned that Massad was recommending two therapists for the children unbeknownst to Sarah and, therefore, needed to subpoena those therapists. She argued she received incomplete files from Massad that needed to be supplemented. She still needed text messages and audio messages between Stephen and the children, as well as additional details regarding a lawsuit involving Stephen's boating accident. Finally, she argued that the need for additional witnesses related to these items required a delay in the trial.

Stephen informed the trial court that none of this information had been conveyed to him previously and that he had complied with all discovery requests. Massad also informed the trial court that this was the first time she had heard of any of these issues. Sarah conceded that she had never informed Massad about any missing information.

Based on this information, along with a note from the prior judge recommending a trial date as soon as possible, the trial court denied Sarah's motion for continuance.

Appellate courts consider several nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance to conduct discovery, including the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161; *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521–22 (Tex. 1995).

At the hearing, Sarah explained in generalities when she learned of potential new discovery, what discovery she was seeking, and some of the witnesses she sought to depose, but nothing in the record explains why she did not seek any of the discovery from Stephen or Massad earlier. Additionally, the record shows that the case was filed in June 2021, and Sarah agreed to the trial date in February 2022.

Given the length of time the case had been on file and the lack of evidence that Sarah had exercised due diligence in seeking the discovery, Sarah has not shown that the trial court abused its discretion in denying her motion for continuance. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800–01 (Tex. 2002); *Perrotta v. Farmers Ins. Exch.*, 47 S.W.3d 569, 576 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

**Conservatorship, Custody, Access, and Child Support**

## A. Standard of Review

Conservatorship, control, possession, access, and child support are reviewed for an abuse of discretion. *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (child support); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (custody). The trial court's order will not be disturbed unless an abuse of discretion is shown. *Avila v. Avila*, No. 03-05-00030-CV, 2006 WL 2986225, at *4 (Tex. App.—Austin Oct. 20, 2006, no pet.) (mem. op.) (trial court has wide discretion in determining child's best interest and its finding will not be disturbed absent abuse of that discretion); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.—Texarkana 2004, no pet.)).

## B. Exclusive Rights Awarded to Stephen

In her second and third issues, Sarah contends the trial court abused its discretion by granting Stephen the exclusive right to designate the children's primary residence; consent to medical, dental, and surgical treatment involving invasive

procedures; consent to psychiatric and psychological treatment of the children; and make decisions about the children's education.

When reviewing for an abuse of discretion, "legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). In considering whether the trial court abused its discretion, we must determine (1) whether there was sufficient evidence upon which to exercise its discretion and, if there was, (2) whether the application of its discretion was erroneous. *Id.* at 588.

Relying on Section 153.004 of the Family Code, Sarah argues that Stephen cannot have exclusive decision-making rights because there was credible evidence that he had a history or pattern of family violence. *See* TEX. FAM. CODE § 153.004(b).

First, Section 153.004(b) does not prohibit a parent from having exclusive rights based on evidence of a history or pattern of family violence. Instead, it prohibits the appointment of joint managing conservators if there is credible evidence of "a history or pattern of past or present child neglect, or physical or sexual abuse by one parent directed against the other parent, a spouse, or a child" and creates a rebuttable presumption that it is not in the best interest of a child to have a parent be granted the exclusive right to determine the child's primary residence if there is credible evidence of such neglect or abuse. *Id.*; *see Watts v. Watts*, 396

10

S.W.3d 19, 22 (Tex. App.—San Antonio 2012, no pet.); *In re D.R.*, 177 S.W.3d 574, 582 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Here, Sarah and Stephen are joint managing conservators, but Stephen has certain exclusive rights. The conservatorship orders were based on certain trial court findings of fact. The trial court found that:

- the provisions for conservatorship contained in the Final Decree of Divorce are in the best interest of the children;

- it is in the best interest of the children that the parties be appointed joint managing conservators of the minor children and that Stephen[2] have the exclusive right to designate the children's primary residence and exclusive right to enroll the children in school;

- the provisions for possession and access to the children for Sarah contained in the Final Decree of Divorce are in the best interest of the children;

- the election of the alternative beginning and ending possession times awarded in a Standard Possession Order would not be in best interest of the children;

- the terms and conditions set forth in the Final Decree of Divorce are in the best interest of the children;

- the terms in the Final Decree of Divorce that impose restrictions or limitations on Sarah's right to possession of or access to the children do not exceed those that are required to protect the best interest of the children and the safety and welfare of the children;

- Stephen's testimony regarding past events, particularly those involving Sarah and his own behavior and alcohol and drug consumption, although not limited to those events, was credible;

- Sarah's testimony regarding past events, particularly those involving Stephen and her own behavior and alcohol and drug consumption, was not credible;

- Touchstone's testimony was credible and reliable;

---

[2]     For ease of reading, the full names have been omitted.

- Massad's testimony was credible and reliable;

- Sarah cannot consume drugs at any time and provide a safe environment for her children;

- leading up to the time of the final rulings in this cause, Sarah displayed a refusal to accept responsibility for her strained relationship with her daughters;

- Sarah withheld the children from their Father at the outset of this divorce in a manner that was detrimental to the children and for reasons which lacked credibility;

- sufficient evidence and testimony of Sarah's lack of credibility, drug use, and strained relationship with her children was offered such that supervised possession for Sarah with her children is in their best interests;

- Sarah's testimony about alleged family violence lacked credibility and was contradicted by credible testimony of other witnesses; and

- Stephen had not committed family violence against Sarah.

These findings are supported by the evidence at trial. The trial court heard from Sarah on allegations of family violence by Stephen against her from May 2021. It also heard from Touchstone that Sarah made up the May 2021 allegations to make her story "look better" and to "screw over" Stephen because Sarah wanted to "make his life miserable." Touchstone also testified that Sarah had tried to influence her testimony by sending explicit photographs of her to her employer. Dr. McFate, a plastic surgeon and Sarah's former employer, testified that when Sarah asked him to look at her eye that was purportedly injured by Stephen, he believed the alleged injury could have been caused by something other than being hit, such as allergies. He could not say whether the alleged injury was caused by trauma or not. He denied

12

doing a full examination of Sarah's eye and described it as a "look and see" while in the hallway of their office.

The trial court also considered Massad's report, which stated that Sarah's credibility was a central part of her investigation and that numerous family members, acquaintances, and friends had told her that Sarah "lies about everything" and that "[y]ou cannot believe anything she tells you." Additionally, "virtually all" of the people Massad spoke to said Stephen was the more involved parent in the children's daily lives. Massad also noted that she believed the main reason for difficulty between Sarah and her children was Sarah's "untruthfulness." The trial court noted it would contact the District Attorney's Office to investigate Sarah for perjury and expressed doubts about the veracity of Sarah's family violence allegations against Stephen from October 2020.

Other evidence existed that Sarah's actions have harmed the children. Sarah previously prevented the children from seeing Stephen, which the children's therapist noted harmed the children. Sarah violated the trial court's temporary orders in June 2021 by unenrolling the children from their school and reenrolling them in a different school district. Then, in September 2021, when Stephen refused to agree to Sarah's proposed Rule 11 Agreement, Sarah took their oldest daughter from him, which caused the child to experience an anxiety attack and attempt to jump from Sarah's vehicle. Stephen later enrolled the children in therapy pursuant to the trial

court's temporary order. The children's therapist reported that Sarah's actions toward her older child negatively affects their relationship.

The trial court found that Sarah's accusations of family violence were not credible and that Stephen had not committed family violence. The record contains factually and legally sufficient evidence to support those findings. Thus, the limitations on exclusive rights found in Section 153.004 on which Sarah relies are inapplicable. TEX. FAM. CODE § 153.004(b) (restricting award of certain exclusive rights to parents where there is credible evidence of neglect or abuse).

We further conclude that the award of exclusive rights to Stephen was not an abuse of discretion. A trial court has wide latitude in determining child custody issues, and its decision will be reversed only when it appears from the record as a whole that the trial court abused its discretion. *Gillespie*, 644 S.W.2d at 451. The best interest of the child is always the primary consideration when determining issues of conservatorship, possession, and access to the child. TEX. FAM. CODE § 153.002; *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021). The determination of conservatorship issues is "intensely fact driven" and will not be disturbed on appeal unless the record shows the trial court abused its discretion. *See In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied). That is, Sarah must show that the trial court acted in an arbitrary or unreasonable manner or without reference to guiding principles of law. *Coleman*, 109 S.W.3d at 110.

14

There is a rebuttable presumption that both parents should be appointed joint managing conservators. TEX. FAM. CODE § 153.131(b); *Turrubiartes v. Olvera*, 539 S.W.3d 524, 528 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The trial court ordered that Sarah and Stephen be appointed joint managing conservators, and on this record, we cannot say that the trial court abused its discretion in doing so. *See id.*; *see also Gillespie*, 644 S.W.2d at 450–51. There is sufficient evidence in the record to support the trial court's determinations of custody, possession, and access, including the award of certain exclusive rights to Stephen. *See Turrubiartes*, 539 S.W.3d at 5289; *Coburn*, 433 S.W.3d at 828; *see also In re L.M.M.*, No. 03-04-00452-CV, 2005 WL 2094758, at *9 (Tex. App.—Austin Aug. 31, 2005, no pet.) (mem. op.) (trial courts have discretion to establish the terms and conditions of conservatorship). Therefore, we overrule Sarah's second and third issues.

## C.   Drug Screening

In her fourth and fifth issues, Sarah contends that the requirement that she undergo drug testing is punitive and thus an abuse of discretion.

As noted, in reviewing issues of custody, control, possession, child support, and visitation, the trial court is given wide latitude, and an appellate court will not reverse a trial court's order unless it appears from the record that the court abused its discretion. *In re J.R.D.*, 169 S.W.3d at 743. Trial courts can "fashion an order that restricts possession or access so as to eliminate any danger to the physical or

emotional welfare of the child." *In re R.D.Y.*, 51 S.W.3d 314, 323 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). But restrictions on a parent's right to possession or access "may not exceed those that are required to protect the best interest of the child." *See* TEX. FAM. CODE § 153.193. Under appropriate circumstances, a trial court does not abuse its discretion by ordering future drug testing of a parent if it is in the child's best interest. *In re L.G.K.S.*, No. 12-18-00178-CV, 2019 WL 4462693, at *9 (Tex. App.—Tyler Sept. 18, 2019, no pet.) (mem. op.).

The children's dance instructor testified during the temporary orders hearing that on at least one occasion Sarah was drinking alcohol while driving with the children. Touchstone testified that Sarah has a history of using drugs without a prescription, namely Adderall and Vyvanse. Massad also testified that she believed Sarah was impaired at the end of trial on March 31.

Based on the record, including evidence of Sarah's past drug use, there was sufficient evidence to support the trial court's determination that it was in the children's best interest to deviate from the standard possession order and require drug testing. *See* TEX. FAM. CODE § 153.256 (factors for courts to consider in setting terms of possession of a child); *In re J.R.D.*, 169 S.W.3d at 742–43 (trial court has wide latitude in deciding child custody issues); *see also In re R.D.Y.*, 51 S.W.3d at 324 (trial court did not abuse its discretion in placing conditions on parent's right to possession of child because it found conditions to be in best interest of child).

16

The trial court found that its restrictions on Sarah's right to possess and access do not exceed those that are required to protect the best interest of the children and the safety and welfare of the children. There is sufficient evidence in the record to support the finding. Sarah has not shown that the trial court acted in an arbitrary or unreasonable manner, without reference to guiding principles of law. *See Worford*, 801 S.W.2d at 109; *In re N.A.S.*, 100 S.W.3d 670, 673 (Tex. App.—Dallas 2003, no pet.) (trial court's determination of best interest of child will not be reversed unless trial court abused its discretion). We overrule Sarah's fourth and fifth issues.

**D.    Conditions to Access and Reunification Therapy**

In issues six through eleven, Sarah contends that the trial court abused its discretion by ordering that she and the children engage in reunification therapy, that she follow the therapist's recommendations as to frequency and duration of therapy, that she is responsible for the entire cost of the therapy, and that the children not be around Bongiorno until the therapist provides guidance that must be followed.

Before trial, while completing her investigation, Massad recommended that Sarah begin reunification therapy with the children, but reunification therapy never began. Massad later testified that the primary reason for the troubled relationship between Sarah and her daughters was Sarah's untruthfulness. Massad's report considered how Sarah's allegations that Stephen committed family violence and abused alcohol damaged the children. Massad opined that Sarah's failure to

17

appreciate what she had put the children through should result in supervised contact with the children until Sarah participates in reunification therapy and the parties receive feedback from the therapist.

In addition to this testimony, the trial court previously heard evidence of how Sarah moved the children from their residence into Bongiorno's home while Stephen was hospitalized and how Sarah had violated the trial court's earlier orders enjoining her from bringing the children around Bongiorno. The older child's therapist testified at trial that the older child does not like Bongiorno and does not feel comfortable being around Sarah for extended periods.

After trial, Massad modified her recommendation at the review hearing. She stated that, while she was not suggesting there be no reunification therapy, she recognized that Sarah and the children were getting along much better at that point. She also recommended dropping the restriction that the children have no contact with Bongiorno based on conversations with the children where they said he was a "pretty nice guy" and that they liked him. At that same hearing, Rothfus, the reunification therapist, testified that she disagreed with Massad's modified recommendation on the issue of reunification therapy and that she believed the therapy should still be required.

Under the abuse of discretion standard, we review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial

18

court's order. *See Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). If some evidence of a substantive and probative character exists to support the trial court's order, we will not substitute our judgment for the trial court's. *See Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

Here, the trial court heard testimony about conflict between the children and Sarah that occurred throughout the divorce proceedings. While Massad changed her recommendation between the trial and final review, Rothfus testified that Sarah should still undergo the previously ordered therapy. The trial court also heard conflicting testimony on the children's relationship with Bongiorno. Because there was some evidence to support the trial court's order, we cannot say its decision to impose limitations and restrictions on Sarah's possession or the children's contact with Bongiorno was an abuse of discretion. *See id.*; *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (no abuse of discretion if some probative and substantive evidence supports order).

We overrule Sarah's issues related to the conditions limiting her access to the children and Bongiorno's presence.

## E.     Child Support and Unemployment

In issues twelve through fifteen, Sarah contends that the trial court abused its discretion when it ordered her to pay child support in the amount of $1,065.22 per month and found that she is intentionally unemployed.

A trial court's determination on child support is governed by Chapter 154 of the Family Code. *See* TEX. FAM. CODE §§ 154.001–.309. A court must calculate "net resources" for the purpose of determining child support liability. *Id.* § 154.062(a). "Net resources" include all wage and salary income, self-employment income, and all other income received. *Id.* § 154.062(b).

"Courts may calculate net resources on 'imprecise information.'" *Ayala v. Ayala*, 387 S.W.3d 721, 727 (Tex. App.—Houston [1st Dist.] 2011, no pet.). But "'[t]here must be some evidence of a substantive and probative character of net resources' in order for the court to discharge its duty under [S]ection 154.062." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).

A parent is required to furnish information sufficient to accurately determine her net resources and ability to pay child support. TEX. FAM. CODE § 154.063; *see Bello v. Bello*, No. 01-11-00594-CV, 2013 WL 4507876, at *3 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op.); *In re N.T.*, 335 S.W.3d 660, 666 (Tex.

App.—El Paso 2011, no pet.). But the trial court is not required to accept the parent's evidence of income and resources as true. *In re N.T.*, 335 S.W.3d at 666. The trial court may find that a parent has higher net resources than alleged based on evidence in the record. *See Burney v. Burney*, 225 S.W.3d 208, 214 (Tex. App.—El Paso 2006, no pet.) (trial court found father had higher net resources than he claimed based, in part, on father failing to explain why his deposits were more than his claimed wages).

Additionally, a parent with the ability to find gainful employment cannot evade her child support obligation by intentionally remaining unemployed or underemployed. *McLane v. McLane*, 263 S.W.3d 358, 362 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Tenery v. Tenery*, 955 S.W.2d 337, 340 (Tex. App.—San Antonio 1997, no pet.)).

Applicable here, Section 154.066 allows a trial court to apply the child support percentage guidelines to the parent's earning potential if the parent's actual income is significantly less than what she could earn because of intentional unemployment or underemployment. TEX. FAM. CODE § 154.066(a); *see Iliff*, 339 S.W.3d at 82–83. There must be a finding that the parent is intentionally unemployed or underemployed. *Iliff*, 339 S.W.3d at 82. But the statute does not require proof of the motive or purpose behind the unemployment or underemployment. *Id.* at 83.

The paramount guiding principle for child support is the best interest of the child. *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993). Under

21

Section 154.122 of the Family Code, a support order that conforms to the guidelines is presumed to be in the child's best interest, but a court may determine that applying the guidelines would be unjust or inappropriate under the circumstances. TEX. FAM. CODE § 154.122. A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its order. *Newberry*, 146 S.W.3d at 235.

Dr. McFate testified that Sarah voluntarily left her job and lied about the circumstances surrounding her departure. The trial court found Dr. McFate's testimony credible. Sarah testified at the October hearing that she was about to start a new job earning $30 per hour and working 9:00 a.m. to 2:00 p.m. five days a week. But she never started the job. Further, Sarah admitted that Bongiorno pays at least some of her expenses, and Bongiorno testified that he pays all her expenses. Based on her hourly earning potential, the trial found that Sarah can earn monthly net resources in the amount of $4,260.87.

The trial court's determination of Sarah's resources was supported by some evidence of a substantive and probative character. *Bello*, 2013 WL 4507876, at *4. We conclude that the trial court did not abuse its discretion by applying the percentage guidelines based on Sarah's earning potential. *See* TEX. FAM. CODE § 154.066; *see also McLane*, 263 S.W.3d at 362; *Tenery*, 955 S.W.2d at 340.

Accordingly, the trial court did not abuse its discretion in determining the amount of child support.

We overrule Sarah's final issues related to child support and unemployment.

## Conclusion

We affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Goodman, Landau, and Hightower.